UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24223-CIV-MARTINEZ/SANCHEZ

CHANEL, INC.,

    Plaintiff,

v.

CHANELOVER.COM a/k/a CHANELOVE.SHOP
and SAKSOFFVIP.COM; *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff Chanel, Inc.'s Application for Entry of a Preliminary Injunction. ECF No. 8.[1] The Plaintiff has moved for entry of a preliminary injunction against the Defendants[2] based on alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d), and claims of common law unfair competition and common law trademark infringement.

The Court held a hearing on November 21, 2024, at which only counsel for the Plaintiff was present and available to provide evidence supporting the Plaintiff's application. The

---

[1] The Plaintiff's application was originally filed as an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, but the Honorable Jose E. Martinez granted the Plaintiff's request for entry of a temporary restraining order and an order restraining transfer of assets, ECF No. 10, and he then referred all matters relating to the Plaintiff's request for entry of preliminary injunction to the undersigned for a Report and Recommendation, ECF No. 11.

[2] The Defendants, who are listed in the caption of Plaintiff's amended complaint, ECF No. 17, are the Individuals, Business Entities, and Unincorporated Associations further identified in Schedule "A" to the amended complaint. *See id.* at 26-29. Schedule "A" can also be found on the public docket at ECF No. 7-1.

Defendants have not responded to the Plaintiff's application, have not made any filings in this case, and have not appeared in this matter, either individually or through counsel. Having reviewed the Plaintiff's application, its accompanying attachments, the record, and the relevant legal authority, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's application be **GRANTED**.

## I.     BACKGROUND

Plaintiff is the owner of all rights in and to the federally registered trademarks identified in Paragraph 4 (the "Chanel Marks") of the Declaration of Elizabeth Han. *See* ECF No. 8-1 at ¶ 4; *see also* ECF No. 1-2; ECF No. 17-1. The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified in the trademark registrations. *See* ECF No. 8-1 at ¶ 4.

Defendants, through their various Internet websites operating under the seller names identified on Schedule "A" (the "E-commerce Store Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements on, and exact copies of one or more of the Chanel Marks. *See* ECF No. 8-1 at ¶¶ 9-14; *see also* ECF No. 8-2 at ¶¶ 2-3 (Declaration of Stephen M. Gaffigan); ECF No. 8-3 at ¶ 4 (Declaration of Kathleen Burns).

Although Defendants may not copy and/or infringe on any of the Chanel Marks for any category of goods protected, the Plaintiff has submitted sufficient evidence showing that each Defendant has infringed on, at least, one or more of the Chanel Marks. *See* ECF No. 8-3 at ¶¶ 4-5; ECF No. 8-1 at ¶¶ 9-14; ECF Nos. 8-4, 8-5, 8-6, 8-7, 8-8, 8-9, 8-10 (Website Captures of Infringing Activity, Parts 1-7). Defendants are not now, nor have they ever been, authorized or licensed to use the Chanel Marks. *See* ECF No. 8-1 at ¶ 9; *see also id.* at ¶¶ 13-14.

The Plaintiff retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's branded products by Defendants and to document the available payment account data for receipt of funds paid to Defendants for the sale of such counterfeit branded products. *See* ECF No. 8-1 at ¶ 10; ECF No. 8-2 at ¶ 2; *see also* ECF No. 8-3 at ¶ 3. Invisible Inc accessed the e-commerce stores operating under each of Defendant's E-commerce Store Name and placed orders for the purchase of various products, all bearing and/or using counterfeits of, at least, one of Plaintiff's trademarks at issue in this action. *See* ECF No. 8-3 at ¶ 4 & n.1; *see also* ECF Nos. 8-4 to 8-10. Each order was processed entirely online, and, following the submission of the orders, Invisible Inc documented information for finalizing payment for the products ordered on each of the Defendant's e-commerce stores as identified on Schedule "A." *See* ECF No. 8-3 at ¶ 4 & nn.2-4; *see also* ECF No. 8-2 at ¶¶ 2, 5; ECF Nos. 8-4 to 8-10. At the conclusion of the process, the detailed web pages of the various products bearing the Chanel Marks offered for sale and ordered via Defendants' E-commerce Store Names were sent to Plaintiff's representative for inspection. *See* ECF No. 8-3 at ¶¶ 4-5; ECF No. 8-2 at ¶ 2; ECF No. 8-1 at ¶¶ 11-13. Plaintiff reviewed the detailed web page captures reflecting Plaintiff's branded products identified and captured by Invisible Inc and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* ECF No. 8-1 at ¶¶ 11-14; *see also* ECF Nos. 8-4 to 8-10 (Infringing Activity Exhibits).

On October 29, 2024, Plaintiff filed an initial complaint (ECF No. 1), and on November 5, 2024, Plaintiff filed an amended complaint (ECF No. 17) against Defendants for trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114 (Count I); false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count II); cybersquatting, in violation of 15 U.S.C.

§ 1125(d) (Count III)[3]; common law unfair competition (Count IV), and common law trademark infringement (Count V). *See* ECF Nos. 1, 17. On October 30, 2024, the Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. 8, and its *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 9. On October 31, 2024, the Court entered a Sealed Order Granting Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets, ECF No. 10, and a Sealed Order Authorizing Alternate Service of Process, ECF No. 12.

Pursuant to the October 31, 2024 Order, the Plaintiff served each Defendant, by email and through Plaintiff's designated serving notice website, with a copy of the initial complaint, the Order Granting *Ex Parte* Application for Temporary Restraining Order, the amended complaint, and all other filings in this matter. *See* ECF Nos. 21-23. The Plaintiff also served each Defendant with a copy of the Court's Order Setting Preliminary Injunction Hearing and Briefing Schedule (ECF No. 18). *See* ECF Nos. 24-25.

## I. LEGAL STANDARD

The Plaintiff seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. To obtain a preliminary injunction, the Plaintiff must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403

---

[3] The Plaintiff brings its claim for cybersquatting (Count III) only against Defendant No. 1, as listed on Schedule "A."

F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

As outlined below, the Plaintiff has submitted sufficient evidentiary support to warrant enjoining Defendants from engaging in the alleged infringing activities. *See, e.g., Louis Vuitton Malletier, S.A. v. Lin*, No. 10-61640-CIV-HUCK, 2010 WL 11550032 (S.D. Fla. Sept. 2010) (granting preliminary injunction against defendants who failed to respond or appear in the case, after plaintiff presented sufficient evidence of infringing activity to support its application for preliminary injunction).

## II. ANALYSIS

The declarations and exhibits submitted by the Plaintiff in support of its application for preliminary injunction support the following conclusions of law:

A. The Plaintiff has a substantial likelihood of success on the merits of its claims. The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, infringements on, and exact copies of the Chanel Marks, and that (2) the products Defendants are selling and promoting for sale are unauthorized copies of Plaintiff's products that bear and/or use unauthorized copies of the Chanel Marks.

B. Because of the infringement upon the Chanel Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's amended complaint, application, and accompanying declarations and exhibits, demonstrate that immediate and irreparable

loss, damage, and injury will result to Plaintiff and to consumers if a preliminary injunction is not issued.

    i. Defendants own or control commercial Internet based e-commerce stores operating under their seller names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights; and

    ii. There is good cause to believe that more counterfeit and infringing products bearing and/or using the Chanel Marks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and damage to its reputation among consumers.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D. The public interest favors issuance of a preliminary injunction to protect the Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

### III. CONCLUSION

For the foregoing reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Application for Entry of Preliminary Injunction, ECF No. 8, be **GRANTED.** The undersigned further recommends that the preliminary injunction provide as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are hereby restrained and enjoined until further Order of this Court from the following:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Chanel Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Chanel Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Chanel Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks or any confusingly similar trademarks, on or in connection with all e-commerce stores

7

owned, operated, or controlled by them, including the Internet based e-commerce stores operating under the E-commerce Store Names.

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Preliminary Injunction shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms that are visible to a computer user or serves to direct computer searches to e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the E-commerce Store Names.

(4) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Preliminary Injunction.

(5) Upon Plaintiff's request, the privacy protection service for any of the E-commerce Store Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants.

(6) Upon receipt of this Preliminary Injunction, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and

affiliates shall immediately, to the extent not already done, (i) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the E-commerce Store Names, payees, merchant identification numbers, financial accounts, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Preliminary Injunction; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) divert those restrained funds to a holding account for the trust of the Court;

(7)     Upon receipt of this Preliminary Injunction, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Preliminary Injunction shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court.

(8) Any Defendant or financial institution account holder subject to this Preliminary Injunction may petition the Court to modify the asset restraint set out in this Order.

(9) This Preliminary Injunction shall apply to the E-commerce Store Names, associated e-commerce stores, and financial accounts, and any other e-commerce store names or financial accounts which are being used by Defendants for the purpose of counterfeiting the Chanel Marks and/or unfairly competing with Plaintiff.

(10) This Preliminary Injunction shall no longer apply to any Defendant or associated e-commerce store name dismissed from this action or as to which Plaintiff has withdrawn its request for a preliminary injunction.

(11) This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date set by the Court or stipulated to by the parties.

(12) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously-posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(13) In addition, for the purpose of providing additional notice of this proceeding and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, and marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel

with any e-mail addresses known to be associated with Defendants' respective E-commerce Store Names.

_____

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation, if any, with the Honorable Jose E. Martinez, United States District Judge. Accordingly, the parties shall have **until 12:00 p.m. (noon) on Tuesday, November 26, 2024** to file and serve any written objections to this Report and Recommendation. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 21st day of November 2024.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
     Counsel of Record