UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24223-CIV-MARTINEZ/SANCHEZ

CHANEL, INC.,

     Plaintiff,

v.

CHANELOVER.COM a/k/a CHANELOVE.SHOP
and SAKSOFFVIP.COM, *et al.*,

     Defendants.                    /

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT

       This matter is before the Court on Plaintiff Chanel, Inc.'s Motion for Entry of Default Final Judgment Against Defendants.[1] ECF No. 38.[2] A clerk's default was entered against Defendants on December 3, 2024. ECF No. 37. Despite having been served, the Defendants failed to appear, answer, or otherwise make any filings in this case, and the deadline to do so has long passed. Having reviewed the motion, its accompanying attachments, the record, and the relevant legal authority, and being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Motion for Entry of Default Final Judgment Against Defendants, ECF No. 38, be **GRANTED**.

---

[1] The Defendants, who are listed in the caption of Plaintiff's Amended Complaint, ECF No. 17, are the Individuals, Business Entities, and Unincorporated Associations further identified in Schedule "A" to the Amended Complaint. *See id.* at 26-29. Schedule "A" can also be found on the public docket at ECF No. 7-1 and is attached to this Report and Recommendation.

[2] The Honorable Jose E. Martinez referred Plaintiff's Motion for Entry of Default Final Judgment Against Defendants to the undersigned for a Report and Recommendation. ECF No. 39.

# I.      BACKGROUND[3]

Plaintiff sued Defendants for trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a); cybersquatting against Defendant Number 1 on Schedule "A" (the "Cybersquatting Defendant") under Section 43(d) of the Lanham Act, 15 U.S.C § 1125(d); common law unfair competition; and common law trademark infringement.  ECF Nos. 1, 17.

Plaintiff is the owner of all rights in and to the federally registered trademarks identified in Paragraph 14 of the Amended Complaint (the "Chanel Marks").  *See* ECF No. 17 at ¶ 14; *see also* ECF No. 8-1 at ¶ 4; ECF No. 1-2; ECF No. 17-1 (Certificates of Registration for the Chanel Marks).  The Chanel Marks "are used in connection with the manufacture and distribution of high-quality goods in the categories identified" in the Amended Complaint and the trademark registrations.  ECF No. 17 at ¶ 14; ECF No. 8-1 at ¶ 4.

The Amended Complaint establishes that Defendants, through their various Internet websites operating under the seller names identified on Schedule "A" (the "E-commerce Store Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements on, and exact copies of one or more of the Chanel Marks.  *See, e.g.*, ECF No. 17 at ¶¶ 23-27, 49, 57, 74, 80; *see also* ECF No. 8-1 at ¶¶ 9-14; ECF No. 8-2 at ¶¶ 2-3 (Declaration of Stephen M. Gaffigan); ECF No. 8-3 at ¶ 4 (Declaration of Kathleen Burns).

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) caused confusion, mistake, and

---

[3] The following facts are admitted as a result of the Defendants' default.  *See, e.g.*, *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024); Section II *infra*.

deception among members of the trade and the general consuming public as to the origins and quality of the allegedly counterfeit goods through Defendants' operation of the E-Commerce stores and the counterfeit products sold therein; (2) misrepresented to members of the consuming public that the counterfeit goods that were being advertised and sold by them using the Chanel Marks are genuine, non-infringing goods; and (3) competed with Plaintiff for space within organic search engine and social media results, thereby depriving the Plaintiff of a valuable marketing and consumer education tool. *E.g.*, ECF No. 17 at ¶¶ 24, 31, 50, 56, 58-59, 74-75, 81. As to the Cybersquatting Defendant, Plaintiff also established that the Chanel Marks are "distinctive and famous," and that "[t]he Cybersquatted E-commerce Store Names are identical to, confusingly similar to, or dilutive of at least one of the Chanel Marks." *Id.* at ¶¶ 64-68; *see also* ECF No. 38 at 16, 23.

On October 30, 2024, the Plaintiff filed its *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 9, which the Court granted on October 31, 2024, ECF No. 12. The Court granted Plaintiff a temporary restraining order ("TRO") against Defendants on October 31, 2024, ECF No. 10, and granted a preliminary injunction on November 26, 2024, ECF No. 32. Plaintiff served each Defendant with a summons, a copy of the Amended Complaint, and other papers filed in this case in a manner consistent with the Court's Order Authorizing Alternate Service of Process. *See* ECF Nos. 21-25, 30-31; ECF No. 33 at 5; ECF No. 38 at 24. To date, Defendants have not answered or otherwise responded to the Amended Complaint or moved for additional time in which to do so, and the time allowed to do so has long passed. On December 3, 2024, the Clerk entered default against Defendants. ECF No. 37.

On December 27, 2024, Plaintiff filed the instant Motion for Entry of Default Final Judgment, in which it requests that the Court grant default final judgment, enjoin Defendants from further counterfeiting and infringement activities, and award Plaintiff statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c) and additional statutory damages against Defendant No. 1 pursuant to 15 U.S.C. § 1117(d).  ECF No. 38.  Plaintiff further requests that the Court order Defendants to (i) cancel, or at Plaintiff's election, transfer the E-commerce Store Names at issue to Plaintiff and require Defendants, their agents, or assignees to assign all rights, title and interest to the E-commerce Store Names to Plaintiff; (ii) permanently disable, delist, or deindex the websites' uniform resource locators ("URLs") and the E-commerce Store Names from all search engines; (iii) permanently terminate or suspend the messaging application and/or service accounts, including e-mail addresses, used by Defendants; (iv) permanently remove the listings and associated images of goods bearing counterfeits and/or infringements of the Chanel Marks; and (v) require the goods of each Defendant bearing one or more of the Chanel Marks held by any operators and/or administrators of the E-commerce Store Names be surrendered to Plaintiff, in order to ensure the associated e-commerce stores may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of the Chanel Marks and infringing upon Plaintiff's rights.  *Id.*; *see also* ECF No. 17 ¶ 83.

## II.    LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002).  The effect of a clerk's default is that all of the plaintiff's well-pled

allegations are deemed admitted.  *See, e.g.*, *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015).  Therefore, before entering a default judgment, a court must ensure that the well-pled allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also, e.g.*, *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.").  If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages. *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  Where all the essential evidence needed to determine damages is found in the record, an evidentiary hearing on damages is not required. *See, e.g.*, *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2023 WL 2395475, at *1 (S.D. Fla. Mar. 7, 2023).

If there are multiple defendants, the plaintiff must state in the motion for default final judgment that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability. *Zuru Inc. v. Individuals*, No. 1:23-cv-22217-WILLIAMS/REID, 2024 WL 1809310, at *2 (S.D. Fla. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 1797068 (S.D. Fla. Apr. 25, 2024). Generally, if one defendant who is alleged to be jointly and severally liable with other defendants defaults, judgment should not be entered against that defendant until the matter is adjudicated against all the remaining defendants. *Id.* (citing 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998), and *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the merits against the defaulting Defendant alone, pending the continuance of the cause, would be incongruous and illegal.")).

Here, the Plaintiff has stated in its motion that it is not seeking to hold Defendants jointly and severally liable. *See* ECF No. 38 at 1 n.1. The Defendants have not appeared and have defaulted. Therefore, there is no possibility of inconsistent liability between the Defendants, and an adjudication may be entered.

### III.   ANALYSIS

#### A.   Claims

##### 1. Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate

that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same or confusingly similar to Plaintiff's trademark such that consumers were likely to confuse the two. *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

To establish its claim, the Plaintiff alleged that it is the owner of all rights in and to the Chanel Marks. *See* ECF No. 17 at ¶ 14. The Plaintiff also alleges that the Defendants, without the Plaintiff's permission, are using "counterfeit and confusingly similar imitations" of the Chanel Marks when "promoting and otherwise advertising, selling, offering for sale, and distributing" their goods. *Id.* at ¶¶ 23, 24, 49. According to the amended complaint, such activities "are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public" and damages to the Plaintiff. *Id.* at ¶¶ 50-51; *see also, e.g., id.* at ¶¶ 30-31. Thus, the Plaintiff has sufficiently alleged facts establishing each of the elements necessary to state a claim for trademark counterfeiting and infringing under § 32 of the Lanham Act and is entitled to default judgment on this claim.

### 2. False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on its claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must establish Defendants used in commerce, in connection with any goods or services, "any word, term, name, symbol or device, or any combination thereof, or any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of Defendants with Plaintiff, or "as to the origin, sponsorship, or approval of" Defendants' goods, services, or commercial activities by the

7

Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See, e.g.*, *Fendi S.r.l. v. Bag*, No. 19-cv-61356, 2019 WL 4693677, at *3 (S.D. Fla. Aug. 28, 2019) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring)); *Zuru Inc.*, 2024 WL 1809310, at *2 (same).

Here, the Plaintiff alleged that the Defendants' goods "bearing [or] using copies of at least one or more of the Chanel Marks are virtually identical in appearance to Chanel's genuine goods" and "have been widely advertised and offered for sale throughout the United States via the Internet." ECF No. 17 at ¶¶ 55-56; *see also* ECF Nos. 8-4 to 8-10 (web captures of Defendants' infringing online listings). Further, the Defendants' goods are "different in quality" from Plaintiff's genuine goods, which is "likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship" of the goods. *Id.* at ¶ 56; *see also id.* at ¶¶ 24, 31. The Plaintiff's allegations establishing that the Defendants used the Chanel Marks in commerce without authorization and caused confusion are sufficient to state a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Plaintiff is therefore entitled to default judgment on Count II.

### 3. Cybersquatting Against the Cybersquatting Defendant Pursuant to § 43(d) of the Lanham Act (15 U.S.C § 1125(d)) (Count III)

The Plaintiff asserts a claim for cybersquatting solely against the Cybersquatting Defendant. To prevail on a claim under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), "a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith

intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006).

Here, the Plaintiff alleged that "[t]he Chanel Marks were already distinctive and famous at the time the Cybersquatting Defendant registered" its domain names and that those domain names "are identical to, confusingly similar to, or dilutive of one of the Chanel Marks." ECF No. 17 at ¶¶ 65, 67. The registration of the Chanel Marks on the principal federal trademark register, *see* ECF No. 17 at ¶ 14, "on which only marks not 'merely descriptive' may be registered," further establishes their distinctiveness. *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008) (citing 15 U.S.C. §1052(e)); *see also Two Pesos, Inc.*, 505 U.S. at 768 ("generic marks . . . are not registrable as trademarks"). Additionally, "the Cybersquatted E-commerce Store Names incorporate at least one of the Chanel Marks in its entirety surrounded by descriptive or generic terms," making them identical or confusingly similar to the Chanel Marks. *See* ECF No. 38 at 16; ECF No. 17 at 26 (Schedule "A") (listing Cybersquatting Defendant's infringing domain names as "chanelover.com" and "chanelove.shop"); ECF No. 38 at 23 (same); *see also, e.g.*, *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) (explaining that "[t]he taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law" and that the "addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect"). The Plaintiff has also alleged that the Cybersquatting Defendant "has acted with the bad faith intent to profit from the Chanel Marks and the goodwill associated with the Chanel Marks by registering and using its Cybersquatted E-commerce Store Names"' and that its "conduct is done with knowledge and constitutes a willful violation of

Chanel's rights in the Marks" or, "[a]t a minimum . . . constitutes reckless disregard for and willful blindness to Chanel's rights." ECF No. 17 at ¶¶ 64, 68. Thus, the Plaintiff has sufficiently alleged facts establishing each of the elements necessary to state a claim for cybersquatting under § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), and the Plaintiff is accordingly entitled to default judgment on Count III.

### 4. Common Law Unfair Competition and Trademark Infringement (Counts IV and V)

"The analysis of Florida common law claims of trademark infringement and unfair competition is the same as federal claims." *GR Opco, LLC v. Eleven IP Holdings*, No. 22-24119-CIV, 2024 WL 4110524, at *6 (S.D. Fla. July 17, 2024), *report and recommendation adopted*, 2024 WL 4104288 (S.D. Fla. Sept. 5, 2024); *see also, e.g.*, *KAWS, Inc. v. Printify Inc.*, No. 23-CV-24063, 2024 WL 3916493, at *6 (S.D. Fla. Aug. 23, 2024) ("Florida law unfair competition claims are evaluated in same manner as trademark infringement claims."); *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, Inc., 270 F. Supp. 3d 1340, 1362 (S.D. Fla. 2017) (concluding that "the legal analysis for Lanham Act claims applies to" Florida claims of unfair competition); *PetMed XPRESS, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act."); *Investacorp, Inc. v. Arabian Investment Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (recognizing that the analysis of Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim).

As to Count IV, the Plaintiff alleged that the Defendants are "promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements" of the Chanel Marks and using the Chanel Marks to "unfairly compete with Chanel

and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web," all of which is "likely to cause and [is] causing confusion, mistake, and deception among consumers." ECF No. 17 at ¶¶ 74-75. These allegations are sufficient to state a Florida common law claim for unfair competition.

As to Count V, the Plaintiff alleged that it is the owner of the Chanel Marks and that the Defendants' use of the Chanel Marks is "likely to cause and [is] causing confusion, mistake and deception among consumers." ECF No. 17 at ¶¶ 78, 81.

Thus, the Plaintiff has sufficiently alleged facts establishing the elements of its common law unfair competition and trademark infringement claims and is entitled to default judgment on both claims.

### B.    Liability

Here, the Plaintiff has alleged sufficient facts to establish the elements of each of its claims. The factual allegations in the Plaintiff's amended complaint have additionally been substantiated by sworn declarations and other evidence establishing the Defendants' liability under each of the claims. *See* ECF Nos. 8-1, 8-2, 8-3, 8-4 through 8-10, 38-1, and 38-2. Therefore, entry of default judgment in favor of the Plaintiff and against the Defendants pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.    Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F.

Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Moreover, even in a default judgment setting, injunctive relief is available.  *See, e.g.*, *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23; *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006).  Permanent injunctive relief is appropriate where a Plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest.  *eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 392-93 (2006).  The Plaintiff has carried its burden on each of the four factors.  Accordingly, permanent injunctive relief is appropriate.

In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm."  *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  Further, "'[i]n order for an injury to be irreparable, it cannot be undone through monetary remedies.'" *Alpha Signs & Designs v. Individuals*, No. 24-cv-20096, 2024 WL 3543724, at *4 (S.D. Fla. Apr. 3, 2024) (quoting *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1362 (S.D. Fla. 2012)), *report and recommendation adopted sub nom. Alpha Signs & Designs v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, 2024 WL 3543702 (S.D. Fla. May 24, 2024).

Here, the Plaintiff's amended complaint alleges that the Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if the Defendants are not permanently enjoined.  *See, e.g.*, ECF No. 17 at ¶¶ 45, 53, 59, 61, 71, 76, 82.  Further, the amended complaint

alleges, and the submissions by Plaintiff show, that the Defendants are "promoting, advertising, distributing, selling, offering for sale, and/or selling goods . . . bearing and/or using counterfeit and confusingly similar imitations" of the Chanel Marks, and consumers viewing Defendants' counterfeit products would actually confuse them for genuine products bearing the Chanel Marks. *See, e.g.*, *id.* at ¶¶ 23-24, 29-31, 49-50.   Indeed, the amended complaint establishes that the Defendants' "counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods." *Id.* at ¶ 50; *see also, e.g.*, *id.* at ¶ 31.

The Plaintiff has no adequate remedy at law so long as the Defendants continue to operate the E-commerce Store Names because the Plaintiff cannot control the quality of what appears to be its products in the marketplace.   An award of monetary damages alone will not cure the injury to the Plaintiff's reputation that will result if the Defendants' infringing and counterfeiting actions are allowed to continue.   Moreover, the Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace.   *See, e.g.*, ECF No. 17 at ¶ 61; *see also id.* at ¶ 26.   By contrast, the Defendants face no hardship if they are prohibited from the infringement of the Chanel Marks, which is an unlawful act.

Finally, the public interest supports the issuance of a permanent injunction against the Defendants to prevent consumers from being misled by the Defendants' counterfeit products.   *See Arista Recs*, 298 F. Supp. 2d at 1314 (finding that the imposition of an injunction would not disserve the public interest because "the public interest is the interest in upholding copyright protections") (emphasis added); *Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

Unless the Defendants are enjoined from continuing to infringe the Chanel Marks, they will be free to continue infringing the Plaintiff's trademark rights with impunity and will continue to defraud the public with their illegal activities.  In addition, upon a finding of liability pursuant to the ACPA, a court may "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *Louis Vuitton Malletier v. aaaimitationbags.com*, No. 18-62354-CIV-ALTONAGA, 2019 WL 2008910, at *6 (S.D. Fla. March 29, 2019) (quoting 15 U.S.C. § 1125(d)(1)(c)); *see also, e.g.*, *Punch Clock, Inc.*, 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008) (awarding injunctive relief ordering transfer of domain name to plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C)).  Furthermore, "[t]he Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities," which may properly include "injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities" by "[o]rdering the cancellation or transfer" to Plaintiff of the domain names used by Defendants for their infringing activities, so that the domain names "may be disabled from further use as platforms for the infringement of Plaintiff['s] intellectual property rights."  *ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *5-6 & n.5 (S.D. Fla. Dec. 27, 2017) (collecting cases); *see also, e.g.*, *Malletier v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A,"* No. 25-60003-CIV, 2025 WL 2256488, at *6 (S.D. Fla. July 30, 2025).

Accordingly, the undersigned recommends that Plaintiff's request for permanent injunctive relief be granted.

### D.      Requested Statutory Damages

*1. Statutory Damages as to Count 1 (and Damages as to Counts II, IV, and V)*

In addition to injunctive relief, the Plaintiff seeks statutory damages.  *See* ECF No. 17 at ¶83.  In a case involving the use of counterfeit marks in connection with a sale, offering for sale,

or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service.  15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service.  15 U.S.C. § 1117(c)(2).  Here, the Plaintiff has elected statutory damages pursuant to § 1117(c) as to Count I of the amended complaint.

Statutory damages under the Lanham Act are "particularly appropriate in the default judgment context" because it is difficult to ascertain the defendants' profits and because the defendants have not participated in the litigation.  *See CreeLED, Inc. v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A,"* No. 22-CV-23683-JEM/Becerra, 2023 WL 6130593, at *4 (S.D. Fla. Sept. 11, 2023) (citing *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-Civ-Lenard/Goodman, 2016 WL 8679081, at *7 (S.D. Fla. Nov. 3, 2016)); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").  The Court has wide discretion to determine the amount of such statutory damages.  *See PetMed Express, Inc.*, 336 F. Supp 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F. 2d 839, 853 (11th Cir. 1990)).  An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement.  *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-civ, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (citing *Form Motor Co. v. Cross*, 441 F. Supp 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enters. Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998

WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).  An award of statutory damages pursuant to 15 U.S.C. § 1117(c) is "intended not just for compensation for losses, but also to deter wrongful conduct."  *See CreeLED*, 2023 WL 6130593, at *4 (citing *PetMed Express*, 336 F. Supp. 2d at 1220-21).

Here, the allegations in the Plaintiff's amended complaint, which are taken as true, clearly establish that the Defendants intentionally copied the Chanel Marks for the purpose of deriving benefit from the Plaintiff's goodwill and reputation.  ECF No. 17 at ¶ 30.  As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that the Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant individually promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of product bearing and/or using marks that were, in fact, counterfeits of at least two (2) of the Chanel Marks.  *See* ECF No. 38-1 at ¶ 5; ECF Nos. 8-4 through 8-10.  Based on the above considerations, the Plaintiff requests that the Court award statutory damages in the amount of fifty thousand dollars ($50,000.00) per mark, per type of good. *See* ECF No. 38 at 14; ECF No. 38-1 at ¶ 5.  As each Defendant used at least two (2) counterfeit marks on one (1) type of good, Plaintiff requests a statutory damages award in the amount of one hundred thousand ($100,000.00) per Defendant.  *See* ECF No. 38 at 14.  The requested amount of statutory damages should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's Chanel Marks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c).  The Court finds that this

requested award of statutory damages—$100,000.00 per Defendant—falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.[4]

   *2. Statutory Damages as to Count III*

   The Lanham Act also permits the recovery of statutory damages for the Plaintiff's cybersquatting claim.  "Pursuant to the ACPA, the Court may award statutory damages 'in the amount of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.'"  *Punch Clock*, 553 F. Supp. 2d at 1359 (S.D. Fla. 2008) (quoting 15 U.S.C. §1117(d)); *see also Louis Vuitton Malletier*, 2019 WL 2008910, at *6 (A plaintiff "may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just." (citing U.S.C. § 1117(d))).  Here, the Plaintiff "elects statutory damages and submits that due to the Cybersquatting Defendant's intentional, wrongful behavior, an award of $10,000.00 against the Cybersquatting Defendant for each of its Cybersquatted E-commerce Store Names . . . would be just."  ECF No. 38 at 17.  Because the Plaintiff has established that the Cybersquatting Defendant (Defendant No. 1) is liable to Plaintiff on Plaintiff's Count III cybersquatting claim involving two domain names, chanelover.com and chanelove.shop, the undersigned finds that the requested statutory damages award of $20,000.00 against Defendant Number 1 is warranted and just.  *See, e.g.*, *Taverna Opa Trademark Corp. v. Ismail*, No. 08-cv-20776, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages against a defendant for cybersquatting involving a single domain name).

---

[4] Although the Plaintiff has asserted claims for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C § 1125(a) (Count II), and unfair competition (Count IV) and trademark infringement (Count V) under Florida common law, the Plaintiff acknowledges that damages for such claims are encompassed within its requested damages pursuant to § 1117(c), and the Plaintiff seeks no additional damages based on those claims.  *See* ECF No. 38 at 15.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Motion for Entry of Default Final Judgment Against Defendants, ECF No. 38, be **GRANTED**.  The undersigned further recommends that default final judgment be entered for Plaintiff and against the Defendants and that the following relief be granted to Plaintiff for the reasons set forth above:

(1)    <u>Statutory Damages pursuant to 15 U.S.C. § 1117(c)</u>:  Award Plaintiff $100,000.00 against each Defendant.

(2)    <u>Statutory Damages pursuant to 15 U.S.C. § 1117(d)</u>:  Award Plaintiff an additional $20,000.00 against Defendant Number 1.

(3)    <u>Permanent Injunctive Relief</u>, providing as follows:

Defendants, their officers, directors, agents, representatives, subsidiaries, distributors, servants, employees and attorneys, and all persons acting in concert or participation with Defendants are hereby permanently restrained and enjoined from:

a.    manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing and/or using Plaintiff's trademarks, or any confusingly similar trademarks, identified in Paragraph 14 of Plaintiff's Amended Complaint (ECF No. 17) (the "Chanel Marks");

b.    using the Chanel Marks in connection with the sale of any unauthorized goods;

c.    using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

d.    falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

e.    engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of

Defendants is in any way endorsed by, approved by, and/or associated with Plaintiff;

f.     using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

g.     affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce;

h.     otherwise unfairly competing with Plaintiff;

i.     using the Chanel Marks, or any confusingly similar trademarks within domain name extensions or on e-commerce websites, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms that are visible to a computer user or serves to direct computer searches to e-commerce stores, seller names, websites, or domain names registered by, owned, or operated by Defendants; and

j.     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

(4)   <u>Additional Equitable Relief</u>, providing as follows:

a.     In order to give practical effect to the Permanent Injunction, upon Plaintiff's request, the E-commerce Store Names identified on Schedule "A" hereto are hereby ordered to be immediately transferred by the corresponding Defendants, their assignees and/or successors in interest or title, and the Registrars to Plaintiff's control.  To the extent the current Registrars do not facilitate the transfer of the E-commerce Store Names to Plaintiff's control within five (5) days of receipt of this Judgment, upon Plaintiff's request, those corresponding Defendants and the top level domain ("TLD") Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the Registrar of Record for the E-commerce Store Names to a Registrar of Plaintiff's choosing, and that Registrar shall transfer the E-commerce Store Names to Plaintiff, or (ii) place the E-commerce Store Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registries which link the E-commerce Store Names to the IP addresses where the associated websites are hosted;

b.     Plaintiff may serve this injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names;

c.     Plaintiff may serve this injunction on any Internet search engines with a request that they permanently disable, deindex or delist any specific URLs identified by Plaintiff, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via the URLs identified by Plaintiff;

d.     Defendants, their agent(s) or assign(s), shall voluntarily assign in writing all rights, title, and interest, to their E-commerce Store Name(s) to Plaintiff and, if within five (5) days of receipt of this Order Defendants fail to make such an assignment, the Court shall order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

e.     Defendants, their agent(s) or assign(s), shall instruct in writing all search engines to permanently delist or deindex the E-commerce Store Name(s) and, if within five (5) days of receipt of this Order Defendants fail to make such a written instruction, the Court shall order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

f.     Plaintiff may serve this injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Chanel Marks;

g.     Upon Plaintiff's request, Defendants shall request, in writing, permanent termination of any messaging services, e-commerce stores, usernames, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, and social media website;

h.     Upon Plaintiff's request, any messaging service and Internet marketplace website operators and/or administrators for the E-commerce Store Names, identified on Schedule "A" hereto, shall permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks via the e-commerce store names operating under the E-commerce Store Names, and upon Chanel's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks associated with or linked to the same sellers or linked to any other alias e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods

20

bearing and/or using counterfeits and/or infringements of the Chanel Marks; and

i.   Upon Plaintiff's request, the Defendants and any Internet marketplace website operators and/or administrators for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the Chanel Marks in its inventory, possession, custody, or control, and surrender those goods to Chanel.

j.   Pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates, are to immediately (within five (5) business days) identify, restrain, and surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names used by Defendants presently or in the future, as well as any other related E-commerce Store Name(s) and account(s) of the same customer(s), and any other account(s) which transfer funds into the same financial institution account(s).   Such financial accounts and/or sub-accounts shall remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.   All financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall provide to Plaintiff at the time any funds are surrendered, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained prior to release; and (iii) the total funds released per Defendant to Plaintiff.

_____

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation, if any, with the Honorable Jose E. Martinez, United States District Judge. Accordingly, the parties shall have **until September 19, 2025,** to file and serve any written objections to this Report and Recommendation. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

    **RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 13th day of September 2025.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Jose E. Martinez
        Counsel of Record

## SCHEDULE "A"
### DEFENDANTS BY NUMBER, E-COMMERCE STORE NAMES,
### FINANCIAL ACCOUNT INFORMATION, AND MEANS OF CONTACT

| Def. No. | Defendant / E-commerce Store Name | Payee | Merchant ID | Means of Contact |
|---|---|---|---|---|
| 1 | chanelover.com | 武汉尚理法律咨询有限公司 | DQZMDZ3EW7BD2 | intheluxury@outlook.com |
| | chanelove.shop | HUANGYEYONG LLC | 8RR7HLE8FXTJN | intheluxury@outlook.com |
| | saksoffvip.com | 武汉市易建通科技有限公司 | JV6BLY7R85GDJ | intheluxury@outlook.com |
| 2 | saks-sale.com | Demeanorwave | P38KZWXDHFH4N | saks-sale@outlook.com saksinlastcall@outlook.com |
| | saks5th-bag.com | Demeanorwave | P38KZWXDHFH4N | saksinlastcall@outlook.com saksoff5th@163.com |
| | off5th-sale.com | ethroak | MD9GPEYLYFAKQ | saksinlastcall@outlook.com |
| | sakssamplesale.com | ethroak | MD9GPEYLYFAKQ | saksoff5th@163.com |
| | saks5th-lastcall.com | Xuzhou Liangzi Building Decoration Co., Ltd. | G7F2NLYY7RYKC | saksoff5th@163.com |
| | saks-hotsale.com | Saks-HotSale | VJMBDUSK4CR5C | Saks-HotSale@outlook.com saksoff5th@163.com |
| | saksfifth-clearance.com | Suzhou Chuzhuo E-commerce Co., Ltd. | GB5ZSSQVJVR44 | saksinlastcall@outlook.com |
| | saks--inlastcall.com | 西咸新区秦汉新城晨亮电子商务有限公司 | NKJMJWJ6PS7WW | saksinlastcall@outlook.com |
| 3 | off5th-online.shop | Luxurious Grace | QDQRJVXP8XJAW | huibobby@hotmail.com |
| | hotboutiques.top | 佛山市南海区爽栩信贸易商行（个体工商户） | QDQRJVXP8XJAW | huibobby@hotmail.com |
| | yairule.shop | Luxurious Grace | QDQRJVXP8XJAW | wayillop@hotmail.com huibobby@hotmail.com |
| | sunnygirly.com | 佛山市南海区颜忻梦贸易商行（个体工商户） | 6N6S37QBK8SQ4 | luxubagteam@outlook.com wayillop@hotmail.com |
| | torsomm.shop | 佛山市南海区颜忻梦贸易商行（个体工商户） | 6N6S37QBK8SQ4 | luxubagteam@outlook.com wayillop@hotmail.com |

| | | | | |
|---|---|---|---|---|
| 4 | bagsflash.com | xin jiang ming xin xiang yu zhu bao yu qi you xian gong si | UMA9D46Y5NKJ8 | support@xiaoketyy.com |
| | bagshoping2024.com | xin jiang ming xin xiang yu zhu bao yu qi you xian gong si | UMA9D46Y5NKJ8 | bodroomltd@gmail.com |
| | | shen zhen shi wei xin ling dian zi shang wu you xian gong si | X959NS4RSDARL | bodroomltd@gmail.com |
| | | online store | WTA6XTH4ALEEJ | |
| | bagss2024.us | shen zhen shi wei xin ling dian zi shang wu you xian gong si | X959NS4RSDARL | support@xiaoketyy.com jinjjusn@outlook.com |
| | | online store | WTA6XTH4ALEEJ | |
| | nordstromlg.com | | EU9UZALX85UXW | support@xiaoketyy.com |
| 5 | criticaly.online | GREEN E-2FOUR PRIVATE LIMITED | YFQY32ER5WSKA | customercs@visable-online.com |
| | | GLAMOUR VOGUE PTE. LTD. | PSJH7JJC9J7FJ | customercs@visable-online.com |
| | tivagses.com | TRENDY LUXE PTE.LTD. | HPZ22CRQ4TQ7N | customercs@visable-online.com |
| | | VERDETENDENZA GALLERY PTE.LTD. | WBCSTFY45AXRU | customercs@visable-online.com |
| | lakevne.live | VERDETENDENZA GALLERY PTE.LTD. | 7SVKRC8Y25SFA | customercs@visable-online.com |
| | | PRESTIGE CHARM PTE.LTD. | NBUDWL3A9MSAW | csservice@splendorxa-live.com |
| 6 | elegapro.com | laikewenhuawangluochuanmeiyouxiangongsi | PPKUUGGWTTN3Q | thegreatbag@outlook.com theluxurybag@outlook.com 1416352721@qq.com |
| | takeluxurybag.shop | laikewenhuawangluochuanmeiyouxiangongsi | PPKUUGGWTTN3Q | thegreatbag@outlook.com theluxurybag@outlook.com 1416352721@qq.com |
| 7 | newyorkndrack.com | 广州臣乌邨贸易有限公司 | J86SS63N95PLJ | bagservice001@gmail.com |
| | ndrgoyeen.shop | SHENGXIJIE | CC3W727KEH3WQ | bagservice001@gmail.com |
| 8 | nordstrompk.com | xluxurybags | QYH5BBT8YMP9W | support@nordstrompk.com |
| | xluxurybags.com | xluxurybags | QYH5BBT8YMP9W | jeffrey@xluxurybags.com support@nordstrompk.com |
| 9 | saks5thinclearance.com | 盐城长风出海科技有限公司 | 685JCVQQN82Q2 | sakssclearance@outlook.com |
| | saks5th-clearance.com | Saks Clearance | 685JCVQQN82Q2 | sakssclearance@outlook.com |

| 10 | rackclearances.com | Bag | QJLX5DKGRN2ES | zengshida@gmail.com<br>annikamiller@yeah.net<br>WhatsApp: 85252959391 |
|---|---|---|---|---|
| | rackbag-us.com | Bag | QJLX5DKGRN2ES | AnnikaMiller@yeah.net<br>servewatchmaxx@gmail.com |
| 11 | nordstromlastcall.com | YoungSong (HongKong) Co., Limited | DNZ7JJB4Q2PXG | support@saks-5thclearance.com |
| | saks-5thclearance.com | YoungSong (HongKong) Co., Limited | DNZ7JJB4Q2PXG | roc@saks-5thclearance.com |
| 12 | neimanmaccuuss.com | Jinhua Li Technology Co., Limited | VCSV56EPQCG7C | support@outlets.services<br>moorains@hotmail.com |
| | saksof-5th.com | Jinhua Li Technology Co., Limited | VCSV56EPQCG7C | support@outlets.services |
| 13 | off5th.top | Online Website Store | TMKFSZTPYEPR6 | hello@servicecus.com |
| | saksbag.com | Online Website Store | TMKFSZTPYEPR6 | service@servicecus.com |
| 14 | angelley.shop | ZHENGSHENG STORE | T95KN7TVBUPS2 | support@rackbags.top |
| 15 | discountsonlines.com | | HSD4ZZUCDFYG2 | kevinlinawesome@gmail.com<br>WhatsApp: 8617850371075 |
| | | | Z657977KMPVEL | nordstromrock@discountsonlines.com |
| 16 | lastchanceoutlets.com | 深圳市若风云科技有限公司 | 9ZBXEQQT8BWLN | itPurse.com@gmail.com<br>support@vipfasbags.shop |
| 17 | lastchancesals.com | Jiangbang Technology Limited | YDTRX3HJJYHJG | support@lastchancesals.com |
| | | TONGQI TRADE CO., LIMITED | AJQAJU3B4HX9G | |
| | rackselas.com | | EL7NB2UAMSKY2 | support@rackselas.com |
| 18 | luckypraise.com a.k.a. luckypraiise.com | lyxjsy@outlook.com | TG4T8SQYM8BEN | luckypraise.lisa@gmail.com |
| 19 | luxlovers.shop | Wear your personality, a new summer style | AJARX6JZSMYRN | bainedana86@gmail.com |
| 20 | mallnordstromrack.com | 百年品牌批发公司 | NL47V73BDHLZQ | service@mallnordstromrack.com |
| | | | JUPNU9D2HHFKC | service@mallnordstromrack.com |
| 21 | neimanmarcuuss.com | watch fashion LLC | 6E6BF24RSNDWN | support@neimanmarcus-last-call.com<br>service@topservicestar.com |
| 22 | nmlastcall.top | roling st | KUM3VP8G268ML | hello@fragrancedeflo.com<br>hello@inperfume.store<br>cusassist@outlook.com<br>hello@beautifulwinter.shop |
| 23 | nordstrommarkdowns.shop | 深圳市无忧科技供应链有限公司 | RQ9APNFB3TXT8 | service@customerservice-help.com<br>service@help-centerservice.com |

| 24 | racklastchance.com | | DNJTV5F3UZLZE | NordstromPR@outlook.com 345738959@qq.com |
|---|---|---|---|---|
| 25 | sak5thoutlet.com | 山东格陆博智能装备有限公司 | 97PB2ETR7L5JY | iouls6767679@gmail.com |
| 26 | saks5thflash.com | 深圳联盈新能源科技有限公司 | 452EZ4X763NCW | info@saks5thflash.com |
| 27 | saks5thonclearance.com | 深圳市酷趣咪科技有限公司 | LPGD4SUBBN5YE | sale@saks5thonclearance.com |
| 28 | saks-clearances.com | 167529160@qq.com | YW93EA87M236W | Saks-clearances@outlook.com |
| 29 | saksclearancesale.com | Lucille Department Store Trading Co., LTD | JNET6NJ6DQNDU | saksoff5th01@outlook.com |
| | | 合肥嘉索商贸有限公司 | CB8PNKYYNMXVN | |
| 30 | saksfifthoff5th.com | ZYTC | SMYPYKUWCFBQJ | saksfifthoff5th@outlook.com |
| 31 | spikestars.com | 河南物万种商贸有限公司 | JEC9KLNUUFMXE | luxury_watch@e-aliyun.com |
| 32 | xviller.com | 绵阳市网尚电子商务有限公司 | Y445QJRSABYP2 | servicewkstore@gmail.com service@silencewalk.com |